# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

**ELTON LEVETT HUGHES,**

        **Plaintiff,**

**v.**                                                                           **Case 2:15-cv-02339-cgc**

**CAROLYN W. COLVIN, Acting**
**Commissioner Social Security**
**Administration,**

        **Defendant.**

## ORDER REVERSING THE DECISION OF COMMISSIONER AND REMANDING
## PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)

Plaintiff filed this action to obtain judicial review of Defendant Commissioner's final decision denying Supplemental Security Income ("SSI") under Title IX under the Social Security Act ("Act"), 42 U.S.C. § 1381, *et seq*. By consent of the parties, this case has been referred to the United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.

Plaintiff's applications were denied initially and on reconsideration. A hearing was held on July 24, 2013 before an Administrative Law Judge ("ALJ"). On December 2, 2013, the ALJ found that Plaintiff was not under a disability as defined in the Act. The Appeals Council of the Social Security Administration denied Plaintiff's request for review, and this decision became the Commissioner's final decision. Plaintiff then filed this action requesting reversal of the Commissioner's decision. For the reasons set forth below, the decision of the Commissioner is

REVERSED and the case is REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) in accordance with the instructions contained herein.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g); *Wyatt v. Secretary of Health & Human Services*, 974 F.2d 680, 683 (6th Cir.1992); *Cohen v. Secretary of Health & Human Services.*, 964 F.2d 524, 528 (6th Cir.1992), and whether the correct legal standards were applied, *Landsaw v. Secretary of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir.1986).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. *See Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was born on October 28, 1965 and was forty-six years old on the date of the administrative hearing. (R. at 33). He has at least a high school education and is able to communicate in English. (R. at 20). He had past relevant work as a moving van driver/helper. (R. at 20). Plaintiff initially alleged that his disability onset date was April 20, 2007 but amended that date to February 1, 2012 at the hearing before the ALJ. (R. at 15).

The ALJ determined as follows: (1) Plaintiff has not engaged in substantial gainful activity since February 1, 2012, the application date; (2) Plaintiff has severe impairments of lumbar degenerative disc disease, diabetes mellitus, and obesity; (3) Plaintiff does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except that he cannot climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs, can occasionally crouch, stoop, kneel, or crawl, and would need the option to sit or stand at will; (5) Plaintiff is unable to perform any past relevant work; (6) the transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled whether or not he has transferrable job skills; (7) considering Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), there are jobs in the national economy that Plaintiff can perform; and, (8) Plaintiff has not been under a disability, as defined in the Act, since February 1, 2012, the date the application was filed. (R. at 17-22).

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. *Born v. Secretary of Health & Human Services*, 923 F.2d 1168, 1174 (6th Cir.1990). The initial burden of going forward is on the claimant to show that she is disabled from engaging in her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. *Id.*

The Commissioner conducts the following, five-step analysis to determine if an individual

is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.[1]
>
> 4. An individual who can perform work that he has done in the past will not be found to be disabled.
>
> 5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301 (6th Cir. 1988).

Here, the sequential analysis proceeded to the fifth step. At step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's RFC . . . and vocational profile." *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). Ultimately, the ALJ found that Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy, and, therefore, was not disabled within the meaning of the Act.

On appeal to this Court, Plaintiff has presented two issues for review. First, Plaintiff asserts

---

[1] Before then proceeding to step four of the sequential evaluation process, the ALJ must determine the claimant's RFC pursuant to 20 C.F.R. § 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe pursuant to 20 C.F.R §§ 416.920(e) & 416.945.

that the Commissioner's decision should be reversed because, although the ALJ purportedly relied on portions of the treating physician, Dr. Kavin Johnson's ("Dr. Johnson"), opinion, he did so selectively without providing good reasons for rejecting key portions and, further, the explanations given were factually inconsistent with the record representing legal error in this case. Second, Plaintiff asserts that the Commissioner's decision should be reversed because the ALJ failed to evaluate Plaintiff's chronic pain under the proper legal standard.

## I. Dr. Johnson's Medical Source Opinion

Plaintiff argues that the ALJ erred in weighing Dr. Johnson's medical source opinion when crafting Plaintiff's RFC. The ALJ's assessment of medical source opinions must follow 20 C.F.R. § 416.927(c), which contains six factors. First, the ALJ must examine the relationship between the patient and medical professional, as more weight is accorded to an examining source. 20 C.F.R. § 416.927(c)(1).

Second, the ALJ must consider whether the medical professional actually treated the patient, as "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(c)(2). If a treating source's opinion on the nature and severity of the impairment(s) is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 416.927(c)(2). If a treating source's opinion is not given controlling weight, the ALJ must consider the length of the treatment relationship and the frequency of examination

along with the nature and extent of the treatment relationship to determine if his or her opinion should be given more weight than a nontreating source. 20 C.F.R. § 416.927(c)(2)(I)-(ii). The ALJ must "always give good reasons" in the notice of determination or decision for the weight given to a treating source's opinion. 20 C.F.R. § 416.927(c)(2); *see also* SSR 96-2p ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

Third, the ALJ must consider the amount of relevant evidence the medical source provides to support the opinion, particularly medical signs and laboratory findings, to determine the amount of weight to be given to the opinion. 20 C.F.R. § 416.927(c)(3). As to nontreating sources, the weight accorded to their opinions will "depend on the degree to which they provide supporting explanations for their opinions." *Id*. The ALJ must also "evaluate the degree to which these opinions consider all of the pertinent evidence in [the] claim, including opinions of treating and other examining sources." *Id*.

Fourth, the ALJ must consider the consistency of the opinion, as the more consistent an opinion is with the record as a whole, the more weight it will be given. 20 C.F.R. § 416.927(c)(4). Fifth, the ALJ generally gives more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to an opinion of a source who is not a specialist. 20 C.F.R. § 416.927(c)(5). Sixth, the ALJ will consider any factors the claimant or others bring to his or her attention, or of which he or she is aware, which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(6).

With respect to Dr. Johnson's opinions, the ALJ found as follows:

> In a medical source statement dated October 2012, treating physician Dr. Kavin Johnson indicated that the claimant is able to lift 10 pounds frequently and 20 pounds occasionally. (Exhibit 5F). He added that the claimant could sit for 4 hours in an 8-hour workday and stand or walk for 3 hours. Dr. Johnson further indicated that the claimant would likely be absent 4 days a month and could not bend or work around dangerous machinery. Dr. Johnson also stated that the claimant's ability to reach, balance, and work around environmental irritants would be limited. I have accorded great weight to Dr. Johnson's opinion that the claimant can lift 10 pounds frequently and 20 pounds occasionally and his opinion that the claimant can sit for 4 hours in an 8-hour workday and stand or walk for 3 hours as his opinion in this regard are consistent with the claimant's presentation upon examination and are well supported by the weight of the evidence of record. Such is the basis for finding that the claimant would need the option to sit or stand at will while at the workplace. However, I have accorded little weight to the remainder of his foregoing opinions as they are not supported by the evidence of record and Dr. Johnson failed to provide any explanation or clinical evidence in support of those opinions.

(R. at 20).[2]

Upon review, the ALJ correctly noted that Dr. Johnson was both an examining physician and Plaintiff's treating physician. It does not appear from the record that Dr. Johnson is a specialist, and neither party asserts that he is.[2] The ALJ did not accord "controlling weight" to any of Dr. Johnson's opinions; instead, he accorded portions of his opinions "great weight" and other portions "little

---

[2] Plaintiff additionally argues that the ALJ misinterpreted Dr. Johnson's opinion with respect to how many hours he could work per day. Plaintiff asserts that, as Dr. Johnson only permits him to sit for three hours and stand or walk for four hours, that he cannot work an eight-hour workday because Dr. Johnson only states that he could perform seven hours of daily activity. The Commissioner argues that Dr. Johnson's opinion only demonstrates that Plaintiff "needed to sit or stand at will," which she argues the ALJ reasonably interpreted "to mean that Plaintiff needed to alternate positions, and, by allowing him to do so at will, the ALJ made certain to accommodate Plaintiff's need to do so at whatever intervals he required." To the extent that the ALJ determines that Plaintiff's argument has merit, Dr. Johnson's opinion on the length of Plaintiff's medically allowable work day should be reconsidered as well on remand.

[2] Plaintiff's brief refers to Dr. Johnson as his primary care physician at the Memphis Health Center. (Plaintiff's Brief at 6).

7

weight." The ALJ did not discuss either the length of Dr. Johnson's treatment relationship with Plaintiff, the frequency of his examinations of Plaintiff, or the nature and extent of the treatment relationship as required by 20 C.F.R. § 416.927(c)(2)(I)-(ii). Ultimately, though, the ALJ accorded the two portions of Dr. Johnson's opinion that he deemed to have "great weight" more weight than the opinions of the state examiners. Thus, he determined that Plaintiff's impairments were "more limiting than was concluded by the State examiners," albeit not as limited as Dr. Johnson's overall opinion suggested.

With respect to the ALJ's reasoning for the "little weight" assigned to the remainder of Dr. Johnson's opinions, the ALJ conclusorily states that "they are not supported by the evidence of record and Dr. Johnson failed to provide any explanation or clinical evidence in support of those opinions." However, the opinions that the ALJ gave "little weight" appear to this Court to be the type of medical opinions that are highly subjective in nature and not easily quantified. Specifically, they include how many days a month his symptoms would cause him to be unable to work, his abilities to work around dangerous machinery and "environmental irritants," and the limitations imposed by his levels of pain. In fact, Dr. Johnson's Clinical Pain Assessment itself, which was not referenced by the ALJ,[3] notes the inherent subjectivity of certain aspects of the treating medical source opinion but the necessity and relevance nonetheless as follows: "Although pain accompanying an injury or impairment is highly subjective and difficult to measure, it is possible for the treating

---

[3] The Commissioner asserts that the ALJ accorded Dr. Johnson's Clinical Pain Assessment "little weight"; however, the ALJ's decision only states that he gave the "foregoing opinions" of Dr. Johnson "little weight," and the Clinical Pain Assessment had not been discussed as a "foregoing opinion" by the ALJ in his decision. Accordingly, it appears to this Court that the ALJ did not address the weight to be accorded to Dr. Johnson's Clinical Pain Assessment or any of his other opinions that were not mentioned in the decision.

physician to estimate the degree of pain that is present in a particular instance, given the nature of the impairment, the degree to which pain is typically of major concern in that impairment, and the extent to which the patient expresses the presence of pain and requests medication for its relief." (R. at 232).

Furthermore, it appears to this Court that the record does contain clinical evidence in support of Dr. Johnson's diagnoses, even though his opinions as to the limitations of those diagnoses may be necessarily subjective. Plaintiff complained to Dr. Johnson of lower back pain rated at 10 out of 10 on the pain assessment scale on February 1, 2012 and March 14, 2012 and had previously visited the emergency room for "acute low back pain" on an unspecified date[4] after "moving furniture." (R. at 204-219). The record contains an Magnetic Resonance Imaging ("MRI") report dated June 27, 2012 confirming Dr. Johnson's diagnosis of severe central canal stenosis secondary to epidural lipomatosis. (R. at 299).[5] Dr. Johnson opines that, although Plaintiff also suffers from morbid obesity and diabetes, "his major disabilit[ies]," as confirmed in the June 27, 2012 MRI, are due to his severe central canal stenosis. (R. at 233).

It is also critical to note that the only other medical source opinions contained in the record are those of the State examiners who issued their reports on March 26, 2012 and May 15, 2012—before the MRI discovering the severe central canal stenosis secondary to epidural lipomatosis was taken. Thus, there is no other medical source opinion contained in the record who had the benefit of the MRI diagnosis. Of particular concern to this Court is that Dr. Johnson's

---

[4] The record does contain a January 12, 2012 Emergency Department Physician Documentation from Methodist Hospital in Germantown, Tennessee, although it is not clear if this is the visit to which Dr. Johnson's notes refer. (R. at 241-42).

[5] The ALJ does discuss the MRI report but refers to it as an x-ray. (R. at 19).

diagnosis of severe central canal stenosis secondary to epidural lipomatosis is not even listed as being one of Plaintiff's severe impairments by the ALJ, thus demonstrating the extent to which certain of his opinions as a the sole treating medical source—and the only medical source to have the benefit of the complete diagnostic record—were disregarded.

Additionally, and importantly, the ALJ never states that the opinions of Dr. Johnson's that he accorded "little weight," or those he did not discuss at all, are contradicted by other evidence in the record. The Commissioner argues that Dr. Johnson's opinions are in fact contradicted by Plaintiff's own reports of his symptoms and abilities, by his "normal examinations and X-rays," by his "lack of abnormalities on examination," his denial as a surgical candidate, and a recommendation that Plaintiff lose weight. (R. at 41-42, 205, 226, 231, 241-42, 273-74, 288, 291, 295-96, 301). Yet, despite the Commissioner's arguments, absent the ALJ providing his own specific bases for his rationale, this Court cannot adequately conduct a review of the decision.

Ultimately, with respect to the ALJ's consideration of Dr. Johnson's opinion as his treating physician, SSR 96-2p requires that the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and that it must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. This Court concludes that the opinion is not sufficiently specific to allow an appropriate review.

## II. Plaintiff's Subjective Complaints of Pain

Plaintiff additionally claims that the ALJ erred in his consideration of Plaintiff's credibility

as to his complaints of chronic pain.[6] The ALJ is required to follow 42 U.S.C. § 423(d)(5)(A) and 20 C.F.R. § 416.929 to evaluate a claimant's symptoms, including pain. The ALJ must consider all of a claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 416.929(a). A claimant's own statements about his level of pain will not alone establish disability; instead, there must be medical signs and laboratory findings which show that the claimant has a medical impairment or combination of impairments which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the other evidence, would lead to a conclusion that the claimant is disabled. *Id*. However, the finding that a claimant's impairments could reasonably be expected to produce his pain does not involve a determination as to the intensity, persistence, or functional limiting effects of his symptoms. 20 C.F.R. § 416.929(b).

In evaluating the intensity, persistence, and functional limitations of a claimant's symptoms, including pain, the ALJ must consider all of the available evidence, including his medical history, the medical signs and laboratory findings, and the claimant's own statements about how the symptoms affect him. 20 C.F.R. § 416.929(a), (c). The ALJ will then determine the extent to which the alleged functional limitations and restrictions due to pain or other symptoms can reasonably

---

[6] Plaintiff asserts that the Sixth Circuit's two-pronged test requires the ALJ to first determine if there is objective medical evidence of an underlying medical condition. *Duncan v. Sec'y of Health and Human Srvs.*, 801 F.2d 847, 853 (6th Cir.1986). If this requirement is met, the ALJ should consider either whether objective medical evidence confirms the severity of the alleged pain arising from the condition or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *Id*. However, the *Duncan* court applied a temporary standard that Congress enacted for determinations made prior to January 1, 1987. *Id*. at 852. As the instant case does not involve a determination made prior to that date, it is governed by the 42 U.S.C. § 423(d)(5)(A) and 20 C.F.R. § 416.929.

accepted as consistent with the medical signs and laboratory findings and other evidence to decide how a claimant's symptoms affect his ability to work. *Id*. The ALJ further considers the following: the claimant's daily activities; the location, duration, frequency, and intensity of his pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication he takes or has taken to alleviate his pain or other symptoms; any measures he uses or has used to relieve his pain or other symptoms; and, other factors concerning his functional limitations and restrictions due to pain or other symptoms. *Id*. § 416.929(c).

In reaching a determination on the credibility of a claimant's assertions of pain, "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible." SSR 96-7p. "The determination or decision must contain specific findings on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id*.

In the instant case, the ALJ concluded that objective medical evidence existed of his severe impairments of lumbar degenerative disc disease, diabetes mellitus, and obesity. (R. at 17). The ALJ also concluded that objective medical evidence existed of his severe canal stenosis secondary to epidural lipomatosis, although as already noted, the ALJ did not list this diagnosis as one of Plaintiff's severe impairments despite Dr. Johnson's conclusion that it was the main impairment as related to Plaintiff's disability. (R. at 17, 19). However, the ALJ found that the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. at 19).

12

With respect to whether Plaintiff's medical history and any medical signs or laboratory findings support Plaintiff's functional limitations and restrictions, the ALJ relied upon the following: (1) a January 2012 examination where Plaintiff had a normal range of motion of the back and normal alignment and X-rays showed "only mild degenerative endplate changes" with "no fracture or acute finding" (R. at 19, 246); (2) a March 2012 X-ray of the lumbar spine, which revealed no bone, joint, or soft tissue abnormality (R. at 19, 226); and, (3) a June 2012 diagnosis of severe central canal stenosis secondary to epidural lipomatosis (R. at 19, 231, 233-34).

While the ALJ appears to have weighed the January 2012 and March 2012 evidence against Plaintiff's credibility, the sole medical source opinion in the record opines that, as Plaintiff himself claims, he requires significantly greater restrictions than the ALJ imposed. The ALJ only accounted "little weight" to portions of Dr. Johnson's opinions assessing greater limitations despite the fact that he is the sole treating physician whose opinion is contained in the record. This Court has already concluded that the ALJ's consideration of Dr. Johnson's opinion did not comply with 20 C.F.R. § 416.929, and a proper consideration of Plaintiff's credibility requires a proper consideration of the medical source opinion evidence that may tend to bolster Plaintiff's credibility.

**III. Conclusion and Instructions on Remand**

Accordingly, pursuant to Sentence Four of Section 405(g) of the Act, the decision of the Commissioner is REVERSED pursuant to 20 C.F.R. § 416.927(c) & § 416.929, and the action is REMANDED.

On remand, the ALJ should reconsider pursuant to 20 C.F.R. § 416.927(c) the weight to be accorded to the opinions of Dr. Johnson, including those that he gave "great weight" and those that he gave "little weight." The ALJ should provide specific reasons for the weight given to the treating

source's medical opinion, supported by evidence in the case record, and it must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

The ALJ should also reconsider the credibility of Plaintiff's subjective reports of pain based upon the objective medical evidence pertaining to his severe central canal stenosis secondary to epidural lipomatosis. The ALJ should also provide specific findings on Plaintiff's credibility, supported by the evidence in the case record, and be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

After reconsidering the weight to be accorded to Dr. Johnson's opinions and the credibility of Plaintiff's subjective complaints of pain, the ALJ should determine if it is necessary to re-evaluate whether Plaintiff's severe central canal stenosis secondary to epidural lipomatosis constitutes a severe impairment, whether Plaintiff is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations, Plaintiff's RFC, whether work other than Plaintiff's past work can be performed, and any other issues that may be affected by this reconsideration of Dr. Johnson's opinions and Plaintiff's credibility.

**IT IS SO ORDERED** this 4th day of April, 2016.

s/ Charmiane G. Claxton  
CHARMIANE G. CLAXTON  
UNITED STATES MAGISTRATE JUDGE